UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD EDWARD LUDLOW,<br><br>Plaintiff,<br><br>v.<br><br>CORRECTIONAL TRAINING FACILITY MEDICAL DEPARTMENT, et al.,<br><br>Defendants. | Case No. 16-cv-03974-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 26 |

**INTRODUCTION**

Plaintiff, a California prisoner currently incarcerated at California State Prison – Solano, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff was previously incarcerated at Correctional Training Facility – Soledad ("CTF") and alleges that, during that time, CTF doctors Branch, Javate, Seyal, and Palomero caused permanent damage to his right elbow and caused him to suffer chronic pain when they refused him elbow surgery between September 2012 and October 2013 in violation of the Eighth Amendment's prohibition on deliberate indifference to serious medical needs. *See* Dkt. No. 1.

**PROCEDURAL BACKGROUND**

This action was originally assigned to Magistrate Judge Donna M. Ryu, and Plaintiff consented to proceed before a magistrate judge. *See* Dkt. No. 1 at 4. On February 15, 2017, Magistrate Judge Ryu issued an order determining that the complaint stated a cognizable Eighth Amendment claim against Defendants Palomero, Javate, Branch, and Seyal for deliberate indifference to Plaintiff's serious medical need; dismissing Plaintiff's claims for injunctive relief based on his confinement at CTF because he was no longer incarcerated at CTF; and dismissing without prejudice Plaintiff's claims against Defendants Banaag and Singh because Plaintiff failed

to allege how Defendants Banaag and Singh were involved in the civil rights violations. Dkt. No. 10. Defendants were served and, on April 17, 2017, declined to consent to magistrate judge jurisdiction. Dkt. No. 21. This action was then reassigned to the undersigned on April 21, 2017. Dkt. No. 23.

Recently, the Ninth Circuit held that all named parties, including unserved defendants, must consent before a magistrate judge has jurisdiction under 28 U.S.C. § 636(c)(1) to hear and decide a case. *See Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017) (magistrate judge lacked jurisdiction to dismiss case on initial review because unserved defendants had not consented to proceed before magistrate judge). Under the *Williams* rule, magistrate judges are unable to take dispositive action on a consent basis if they do not have the consent of unserved defendants.

By order entered May 31, 2018, the Court treated Magistrate Judge Ryu's orders as reports and recommendations to the undersigned and gave the parties fourteen days to file any objections. Dkt. No. 30. The parties have not filed any objections. The Court therefore officially adopts the reports and recommendations of the magistrate judge.

Now pending before the Court is Defendants' motion for summary judgment. Dkt. No. 26. Plaintiff has not filed an opposition, and the deadline to do so has long since passed. For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment.

**FACTUAL BACKGROUND**

**I. Plaintiff's Allegations**

The following allegations are taken from Plaintiff's complaint.[1] Plaintiff has not filed any other pleadings in which he sets forth factual allegations, and Plaintiff has not filed an opposition or any response to the summary judgment motion.

Before Plaintiff arrived at CTF in September 2012, he had been approved for elbow surgery to address right elbow pain. Despite the pre-approval, Dr. Palomero and Dr. Branch denied him elbow surgery. Dkt. No. 1 at 3 and 8. In October 2013, Plaintiff had an appointment

---

[1] In the Court's February 15, 2017 Order of Partial Dismissal and Service, the Court substituted the signed page of Plaintiff's July 29, 2016 complaint for the unsigned one in the initial complaint. *See* Dkt. No. 10 at 5.

2

with an outside specialist, Dr. Pompan at Natividad Medical Center ("NMC"). By this time, Plaintiff's elbow had deteriorated to the point that surgery would be ineffective. Dr. Pompan refused to operate and stated that elbow surgery should have taken place earlier, and that because the operation had not taken place earlier, Plaintiff would eventually lose use of his right arm. Dkt. No. 1 at 5. Despite knowing of the severity of Plaintiff's condition, CTF medical staff did not secure another specialist appointment for Plaintiff until November 2013. Dkt. No. 1 at 5. In November 2013, Plaintiff was seen by Dr. Kowall at Twin Cities Medical Center. Dr. Kowall refused to operate on Plaintiff's elbow because the elbow was "too far gone" for surgery to be helpful. Dkt. No. 1 at 5.

On February 28, 2014, UCSF specialist Dr. Masem performed surgery (arthroscopic debridement) on Plaintiff's right elbow. Dkt. No. 1 at 6. The surgery was unsuccessful. Plaintiff did not regain any range of motion in his right arm, and the pain was not alleviated. Plaintiff was informed that his arm would continue to get worse. Dkt. No. 1 at 6. Plaintiff was prescribed morphine to manage his ongoing elbow pain. Dkt. No. 1 at 6.

A year and a half later, in July 2015, Plaintiff was informed by another UCSF specialist, Dr. Lattanza, that his elbow had continued to deteriorate and that he required another surgery. Dkt. No. 1 at 6. On September 1, 2015, Plaintiff had a second arthroscopic debridement, but it was also unsuccessful. Plaintiff was again prescribed morphine to manage the continuing elbow pain. Dkt. No. 1 at 6.

On January 22, 2016, Plaintiff was informed by UCSF specialists that he could not have any more surgeries until the age of sixty, at which point he would need a complete elbow replacement. Dkt. No. 1 at 7. Plaintiff was prescribed a permanent elbow brace and morphine. Dkt. No. 1 at 7.

Plaintiff does not specify a date or time period for his remaining allegations. Dr. Palomero cancelled Plaintiff's morphine prescription and placed him on psychiatric medication, stating that it would address the nerve damage in Plaintiff's elbow. Plaintiff has not been diagnosed with nerve damage. Dkt. No. 1 at 7–8. Dr. Javate replaced Dr. Palomero as Plaintiff's primary care physician and continued Dr. Palomero's ineffective course of treatment. Dr. Seyal failed to

3

provide proper medical treatment for Plaintiff's elbow when he failed to provide Plaintiff the treatment prescribed and recommended by outside specialists. Dkt. No. 1 at 7–8.

## II. Plaintiff's Medical Treatment

Defendants describe the medical treatment provided to Plaintiff as follows. Plaintiff has not disputed the following facts, except as detailed above.

On or about April 2012, while Plaintiff was incarcerated at San Quentin State Prison ("SQSP"), Plaintiff fell and injured his right hand and elbow after suffering a seizure. Dkt. No. 28 ("Palomero Decl.") ¶ 5.

On September 5, 2012, Plaintiff was transferred from SQSP to CTF. Palomero Decl. ¶ 4. Before he arrived at CTF, he was approved for surgery on his right elbow, also referred to as "arthroscopic debridement." Dkt. No. 1 at 3; Dkt. No. 28 ("Palomero Decl.") ¶¶ 21, 22, 26–28. Plaintiff's right elbow was suffering degenerative changes, which limited his right arm's range of motion; limited his ability to do activities of daily living ("ADLs"); and caused him constant pain. Dkt. No. 1 at 6; Palomero Decl. ¶¶ 5, 9, 11, 13, 20.

On September 24, 2012, Plaintiff was examined by Drs. Biggs and Javate for the April 2012 injuries to his right hand and elbow. Palomero Decl. ¶ 5. The x-rays indicated moderate degenerative changes to the right elbow joint and a non-healing fracture of the right hand. Palomero Decl. ¶ 5.

On October 12, 2012, Plaintiff was seen offsite by Dr. Zewart at Las Ventanas Surgery Center for consultation regarding the non-healing fracture of the right hand. Palomero Decl. ¶ 6. Dr. Zewart recommended surgery for the right hand, and a further referral for the elbow pain. Palomero Decl. ¶ 6. On October 22, 2012, Dr. Zewart performed hand surgery on Plaintiff. Palomero Decl. ¶ 8.

On October 24, 2012, Dr. Branch ordered evaluation of Plaintiff for physical therapy and pain management for right elbow degenerative[2] joint disease. Palomero Decl. ¶ 9.

---

[2] The Court presumes that the reference to "degenerate" joint disease in Dr. Palomero's declaration is a typographical error, and that Dr. Palomero intended to refer to degenerative joint disease.

4

On May 14, 2013, Dr. Palomero examined Plaintiff for the first time as part of a follow-up visit regarding a May 3, 2013 complaint of left foot pain. Palomero Decl. ¶ 18. Dr. Palomero reviewed the x-rays of Plaintiff's left foot and noted no fracture or abnormality. Palomero Decl. ¶ 18.

On May 29, 2013, Plaintiff was seen by Dr. Branch, who examined Plaintiff's left foot and the related x-rays and found no fracture. Palomero Decl. ¶ 19. Dr. Branch also reviewed Plaintiff's pain management medications and renewed all the medications, including morphine. Palomero Decl. ¶ 19.

On June 25, 2013, Dr. Palomero examined Plaintiff in response to his complaint that he was still suffering right elbow pain sixteen months after his fall. Palomero Decl. ¶ 20. Dr. Palomero requested that Plaintiff be referred for an orthopedic evaluation. Palomero Decl. ¶ 20.

On August 15, 2013, Plaintiff had an orthopedic consultation at Natividad Medical Center, and arthroscopic debridement was suggested for his right elbow. Palomero Decl. ¶ 21. In accordance with this recommendation, Dr. Palomero put in a request for arthroscopic debridement of Plaintiff's right elbow. Palomero Decl. ¶ 22. On September 10, 2013, Dr. Palomero renewed Plaintiff's morphine prescription. Palomero Decl. ¶ 23.

On October 16, 2013, Plaintiff was seen by Dr. Kowall of Twin Cities Community Hospital for a second arthroscopic debridement consultation. Dkt. No. 1 at 5; Palomero Decl. ¶ 24. On December 23, 2013, Plaintiff was seen by Dr. Masem for a third arthroscopic debridement consultation. Palomero Decl. ¶ 26. Dr. Masem recommended arthroscopic debridement and an elbow support brace. Palomero Decl. ¶¶ 26, 27. On January 15, 2014, Dr. Palomero submitted a second request for arthroscopic debridement of Plaintiff's right elbow. Palomero Decl. ¶ 27.

On February 28, 2014, Dr. Masem performed arthroscopic debridement and osteophyte removal. Dkt. No. 1 at 6; Palomero Decl. ¶ 28. The arthroscopic debridement did not restore the range of motion in Plaintiff's right arm, and did not eliminate the pain. Dkt. No. 1 at 6; Palomero Decl. ¶ 38.

Between March 5, 2014, and June 11, 2014, Dr. Palomero saw Plaintiff four times for follow up on the arthroscopic debridement. Palomero Decl. ¶¶ 29–33. Dr. Palomero continued

Plaintiff's pain medications and referred him to physical therapy. Palomero Decl. ¶¶ 29–33.

On or about July 14, 2014, Correctional Officer Rios observed Plaintiff doing a daily routine of bench sit-ups, pull-ups, throwing a football, and walking laps. Palomero Decl. ¶ 34.

On August 13, 2014, Plaintiff was paroled. Palomero Decl. ¶ 35. While on parole, Petitioner was scheduled for a second right elbow surgery in February 2015 by UCSF doctor Lattanza. Palomero Decl. ¶ 37. On May 20, 2015, Plaintiff was returned to CDCR custody and housed at SQSP. Palomero Decl. ¶ 36. On June 24, 2015, Plaintiff saw SQSP doctor Hanna and demanded surgery on his right elbow. Plaintiff informed Dr. Hanna that he had been on morphine for four years and that Dr. Lattanza planned to do a decompression of the ulnar nerve because the previous surgery had been ineffective. Palomero Decl. ¶ 38. Prison records contradicted Plaintiff's statement regarding his morphine history. According to prison records, Plaintiff had been tapered off morphine the prior year, and, when he was paroled, he was prescribed Norco, not morphine. Although Plaintiff had start taking morphine again while housed at the county jail immediately prior to transferring to SQSP, Plaintiff was told that he would be tapered off morphine again because long term opioids are not indicated for osteoarthritis. Plaintiff was unhappy about being tapered off morphine and threatened to have his wife call his lawyer. Pursuant to Plaintiff's request, Plaintiff was referred to physical therapy and an appointment was scheduled with Dr. Lattanza. Palomero Decl. ¶¶ 38–40.

On July 22, 2015, Plaintiff was seen by Dr. Lattanza. Dr. Lattanza told Plaintiff that she would try a repeat debridement surgery with decompression of the ulnar nerve. Dr. Lattanza also told Plaintiff that he was not a candidate for a total elbow replacement because he is too young and has a manual labor job. Palomero Decl. ¶ 39. On September 1, 2015, Dr. Lattanza performed the right elbow debridement surgery. Palomero Decl. ¶ 42. This second arthroscopic debridement also failed to eliminate Plaintiff's chronic pain and did not restore any range of motion in the right elbow. Palomero Decl. ¶¶ 47, 51–55.

Between September 1, 2015 and October 28, 2015, Plaintiff visited the SQSP health clinic several times, reporting that the morphine and Tylenol with codeine were ineffective. After speaking with Dr. Lattanza, Dr. Hanna renewed Plaintiff's morphine prescription. Dr. Hanna also

spoke with the physical therapist who reported that Plaintiff was pushing for more drugs and expressed concern that Plaintiff was not doing his home exercise program. Palomero Decl. ¶ 43.

On October 12, 2015, Plaintiff was seen again by Dr. Lattanza. On October 21, 2015, Plaintiff informed Dr. Hanna that Dr. Lattanza had stated that there was nothing she could do for Plaintiff and that the next step was a total elbow replacement when Plaintiff was sixty years of age. Plaintiff reported more range of motion in the right elbow and reported being satisfied with discontinuing morphine in a week. Palomero Decl. ¶ 45.

On October 28, 2015, Plaintiff was transferred from SQSP to CTF. Palomero Decl. ¶ 46. At CTF reception, Plaintiff's elbow brace was taken away because it contained metal. Palomero Decl. ¶ 49.

On November 3, 2015, Dr. Palomero saw Plaintiff for his seizure disorder and chronic right elbow pain. Dr. Palomero noted that Plaintiff's pain not been well-controlled since he went off morphine. Dr. Palomero requested a follow-up orthopedic consultation. Palomero Decl. ¶ 47.

On November 19, 2015, Dr. Palomero again saw Plaintiff for his seizure disorder and chronic right elbow pain. Plaintiff reported that his pain and range of movement were unchanged and that he was still waiting for an orthopedic follow-up. Palomero Decl. ¶ 48.

On December 15, 2015, Plaintiff was seen by Dr. Seyal for the first time. Plaintiff requested that he be refitted for an elbow brace and be prescribed morphine. Plaintiff was instructed to wait for an orthopedist recommendation regarding the elbow brace. He was denied a prescription for morphine. Instead, his Elavil dosage was increased to 75 mgs daily. Palomero Decl. ¶ 49.

Between December 24, 2015, and April 14, 2016, Dr. Palomero saw Plaintiff four times in response to Plaintiff's complaint of right elbow pain. During this time, Plaintiff's right elbow pain and range of movement did not improve. Plaintiff told Dr. Palomero that his pain regime was ineffective and requested morphine, stating that the last ortho consult recommended morphine twice daily. Dr. Palomero denied the request for morphine, stating that, given Plaintiff's history of substance abuse, Plaintiff was not a good candidate for long-term opiate therapy for chronic pain. Dr. Palomero offered physical therapy which Plaintiff declined. During that same time period,

Plaintiff was observed independently carrying out activities of daily living by using his right arm; going to the food and pill lines without difficulty; and walking regularly for exercise. Palomero Decl. ¶¶ 50–53.

On or about January 22, 2016, Plaintiff was issued a rigid elbow brace, but he did not regularly use it in the yard. Palomero Decl. ¶ 53.

On May 16, 2016, Plaintiff was seen by Dr. Javate, his new primary care physician, for severe osteoarthritis with resulting contracture. Plaintiff reported increased pain for two weeks after he unconsciously picked up a cup. Dr. Javate informed Plaintiff that his pain expectations were unrealistic, noting that Plaintiff had never been pain-free, not even after surgery, which was why UCSF had recommended a brace and no further surgery. Dr. Javate told Plaintiff that although the UCSF specialists had recommended morphine twice daily, Plaintiff would not be prescribed morphine because Plaintiff was functional. Dr. Javate ordered a repeat x-ray. Palomero Decl. ¶ 54.

On July 14, 2016, Plaintiff filed the instant action.

On July 28, 2016, Plaintiff was transferred from CTF to his current location, CSP–Solano. Palomero Decl. ¶ 56.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**B.  Analysis**

Plaintiff has alleged that Defendants were deliberately indifferent to his serious medical needs when (1) they denied him elbow surgery between September 2012 and October 2013, causing him to suffer both permanent loss of use of his elbow and chronic pain, and (2) they prescribed him psychiatric medication instead of morphine to manage his chronic pain. Defendants deny that they committed any constitutional violation. Defendants state that they did not act with deliberate indifference; did not deny Plaintiff any appropriate or reasonable medical treatment or medication; and provided Plaintiff with medical treatment within the standard of medical care.

    **1.  Legal Standard**

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies,*

*Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (citing *Estelle*, 429 U.S. at 104). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See id.*

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Deliberate indifference may be manifested in two ways: (1) a denial, delay or intentional interference with medical treatment, or (2) the provision of medical care in an unconstitutional manner by prison physicians. *McGuckin*, 974 F.2d at 1059. However, in either case, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See id.* Inadequate treatment due to negligence, medical malpractice, differences in judgment between an inmate and medical personnel, or a difference in medical opinion does not rise to the level of a constitutional violation. *Id.* ("'[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'") (citing *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988)); *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of [medical] opinion does not amount to a deliberate indifference to Sanchez' serious medical needs.").

Defendants do not dispute, and the Court agrees, that Plaintiff's limited range of motion in his right elbow, which affected his daily activities and caused him pain, constituted a serious medical need. *See McGuckin*, 974 F.2d at 1059–60 ("The existence of an injury that a reasonable

10

doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."). The question before the Court is whether the medical treatment provided by Defendants violated the Eighth Amendment.

The Court views all evidence in the light most favorable to Plaintiff and draws all reasonable inferences possible in favor of Plaintiff. *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680–81 (9th Cir. 1985). However, "[a] reasonable inference is one which 'support[s] a viable legal theory,' which by necessary implication cannot be supported by 'only threadbare conclusory statements instead of "significant probative evidence."'" *Id.* (citing *Mutual Fund Investors, Inc. v. Putnam Mgmt. Co.*, 553 F.2d 620, 624–25 (9th Cir. 1977). To the extent that Plaintiff's allegations are vague and conclusory, such allegations are insufficient to defeat a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (party opposing summary judgment may not rest on conclusory assertions, but must come forward with significant probative evidence). The Court notes that the only pleading filed by Plaintiff that contains factual allegations is his brief complaint, which contains six to eight handwritten pages of allegations. *See* Dkt. No. 1 at 3, 5–10, 12. Many of the allegations in the complaint are vague and nonspecific. For example, Plaintiff does not identify when his interactions with three of the defendants — Dr. Branch, Dr. Seyal, and Dr. Javate — took place. The Court further notes that Plaintiff has not directly challenged any of the factual allegations set forth by Defendants.

**2. Dr. Branch**

Plaintiff describes only one interaction with Dr. Branch. He alleges that in 2012, after he submitted a grievance regarding the denial of elbow surgery, he was seen by Dr. Branch, who prescribed him morphine, hoping that the prescription would cause Plaintiff to forget about elbow surgery. Dkt. No. 1 at 8. Plaintiff also makes the general allegation that all defendants deliberately denied him elbow surgery from September 2012 to October 2013. Dkt. No. 1 at 3 and 5–6.

According to Defendants, Dr. Branch treated Plaintiff on two occasions. Dr. Branch first

11

examined Plaintiff in October 2012, when he ordered that Plaintiff be evaluated for physical therapy and for pain management to treat the degeneration of his right elbow. At the next appointment in May 2013, Dr. Branch reviewed Plaintiff's left foot x-rays and renewed all his pain management medications, including the morphine. Palomero Decl. ¶¶ 9, 19. Defendants state that none of the defendants denied Plaintiff surgery or medication. Dkt. No. 26 at 17.

A prison official violates the Eighth Amendment only if she disregards a substantial risk of serious harm to a prisoner by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. Viewing the record in the light most favorable to Plaintiff, there is nothing in the record from which it may be reasonably inferred that Dr. Branch did not take reasonable steps to address Plaintiff's right elbow. Although Dr. Branch did not insist on immediate elbow surgery when she first examined him in 2012, she referred Plaintiff to be evaluated for two other methods to treat his elbow. When Dr. Branch next examined Plaintiff in 2013, she renewed all his pain management medications, including morphine. While Plaintiff preferred immediate surgery to treat his right elbow, disagreement between an inmate and medical personnel as to the appropriate medical treatment, without more, does not rise to the level of a constitutional violation. *Franklin*, 662 F.2d at 1344. Nor is a constitutional violation established simply because Dr. Branch pursued a different treatment plan (physical therapy and pain medication) than what other doctors had previously authorized (elbow surgery). *Sanchez*, 891 F.2d at 242. In cases involving choices between alternative courses of treatment, to prevail on an Eighth Amendment claim, an inmate must show that the course of treatment made available to him was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to his health. *See Toguchi v. Chung,* 391 F.3d 1051, 1058 (9th Cir. 2004). Plaintiff conclusorily alleges that the failure to immediately proceed with elbow surgery was medically unacceptable, yet he has provided nothing to support this assertion. Plaintiff provides no details about the authorization for elbow surgery, so there is nothing from which the Court may conclude that the authorization indicated that immediate elbow surgery was the only acceptable medical treatment. Plaintiff's conclusory allegations in his complaint are insufficient to establish a triable issue of fact as to whether the failure to immediately proceed with elbow surgery violated the Eighth Amendment.

*Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir. 1984) (to avoid summary judgment, *pro se* prisoner "may not rely solely on the allegations in his pleadings, he must present some significant probative evidence tending to support the complaint") (internal quotation marks and citation omitted).

Viewing the record in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Dr. Branch was deliberately indifferent to the degeneration of Plaintiff's right elbow. The Court GRANTS summary judgment in favor of Dr. Branch.

### 3. Dr. Javate

Plaintiff makes the general allegation that all defendants, which presumably includes Dr. Javate, deliberately denied him elbow surgery from September 2012 to October 2013. Dkt. No. 1 at 3 and 5–6. Plaintiff further alleges that, sometime after his elbow surgeries in 2014 and 2015, Dr. Javate replaced Dr. Palomero as his primary care physician, and that Dr. Javate continued Dr. Palomero's ineffective treatment plan of refusing morphine and prescribing psychiatric medication. Dkt. No. 1 at 7–8. Plaintiff does not describe any specific interactions with Dr. Javate.

According to Defendants, Dr. Javate treated Plaintiff on two occasions. Dr. Javate first examined Plaintiff on September 24, 2012, soon after his arrival at CTF. During this examination, Dr. Javate reviewed Plaintiff's x-rays, which indicated moderate degenerative changes to the right elbow joint and a non-healing fracture of the right hand. Palomero Decl. ¶ 5. There is no indication that Dr. Javate discussed elbow surgery with Plaintiff at this appointment. Dr. Javate next examined Plaintiff three and a half years later, on May 16, 2016. At this examination, Dr. Javate acknowledged that UCSF doctors had recommended morphine, but Dr. Javate declined to change Plaintiff's pain medication to morphine because Plaintiff was functional, in that he was able to perform activities of daily living using his left arm. Palomero Decl. ¶ 54. Dr. Javate also informed Plaintiff that his pain expectations were unrealistic because Plaintiff had never been pain-free. Dr. Javate noted that UCSF doctors did not believe that Plaintiff would be pain-free, which is why the UCSF doctors recommended a brace and did not recommend any further surgery to address the pain. Palomero Decl. ¶ 54.

13

Viewing the record in the light most favorable to Plaintiff, there is no evidence from which it may be reasonably inferred that Dr. Javate failed to take reasonable steps to address Plaintiff's serious medical need. There is no evidence from which it may be reasonably inferred that Dr. Javate denied, much less discussed, surgery with Plaintiff in September 2012. There is also no evidence from which it may be inferred that Dr. Javate's refusal to prescribe morphine to Plaintiff resulted in harm to Plaintiff. Plaintiff's assertion that morphine would be more effective at managing his pain is the type of difference of medical opinion between a lay prisoner and medical personnel that is insufficient to establish a constitutional violation. *See Alford v. Gyaami*, No. 2:13-CV-2143 DAD P, 2015 WL 3488301, at *10 n.3 (E.D. Cal. June 2, 2015) (noting that "in other contexts, courts within this circuit have consistently rejected a prisoner's attempt to dictate the terms of their pain medication") (citing cases). Similarly, because Plaintiff has presented no evidence from which it may be reasonably inferred that the pain management regime prescribed by CTF doctors was not medically warranted, no reasonable jury could find that Dr. Javate's refusal to follow UCSF's morphine recommendation was unconstitutional. *Ruiz v. Akintola*, No. CIV S–09–0318 JAM GGH P, 2010 WL 1006435, at *7 (E.D. Cal. Mar. 17, 2010) (granting summary judgment in favor of defendants on plaintiff's inadequate medical care claim where he presented no expert evidence that it was neither medically warranted nor medically reasonable for defendants to prescribe Ultram instead of the Norco recommended by outside physicians), *aff'd* No. 10–16516 (9th Cir. Nov. 2, 2011); *see also Sanchez*, 891 F.2d at 242.

Viewing the record in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Dr. Javate was deliberately indifferent to Plaintiff's serious medical need. The Court GRANTS summary judgment in favor of Dr. Javate.

**4. Dr. Seyal**

Plaintiff makes the general allegation that all defendants, which presumably includes Dr. Seyal, deliberately denied him elbow surgery from September 2012 to October 2013. Dkt. No. 1 at 3 and 5–6. Plaintiff describes only one interaction with Dr. Seyal. He alleges that he did not receive appropriate medical treatment despite Dr. Seyal's assurance that Plaintiff would receive

any treatment or medication prescribed by the specialists. Dkt. No. 1 at 8.[3]

According to Defendants, Dr. Seyal examined Plaintiff once, on December 15, 2015. At that examination, Plaintiff requested an elbow brace and morphine. Palomero Decl. ¶ 49. Dr. Seyal instructed Plaintiff to wait for an orthopedist's recommendation regarding the elbow brace. Dr. Seyal denied the request for morphine, and instead increased the dosage of Elavil. Palomero Decl. ¶ 49. The Court presumes that Elavil is the psychiatric medication that Plaintiff is referring to, but it is unclear what Elavil is and whether it constitutes improper or ineffective medical treatment for Plaintiff's elbow pain.

The record is simply too sparse to allow for a reasonable inference that Dr. Seyal violated the Eighth Amendment. Because Dr. Seyal's only interaction with Plaintiff was after both of Plaintiff's elbow surgeries, Dr. Seyal cannot be held liable for the alleged denial of elbow surgery. The Court therefore focuses on whether Dr. Seyal took reasonable steps to address Plaintiff's pain. The Court finds that the claim against Dr. Seyal fails for the same reasons that the claim against Dr. Javate failed. There is nothing in the record from which it may be reasonably inferred that Dr. Seyal's refusal to prescribe morphine to Plaintiff on December 15, 2015, resulted in harm to Plaintiff, or that prescribing Elavil instead of morphine was medically unacceptable. *Ruiz*, 2010 WL 1006435, at *7. And, as discussed *supra*, Plaintiff's disagreement with his doctor as to the appropriate medication to manage his pain is insufficient to establish a constitutional violation. *See Alford*, 2015 WL 3488301, at *10 n.3.

Viewing the record in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Dr. Seyal was deliberately indifferent to Plaintiff's serious medical

---

[3] Specifically, in the complaint, Plaintiff states:
> The first appeal I put in back in 2012, I was seen by Dr. Roselle Branch and was placed on pain management medication then, which was morphine and she thought because I was on pain meds I would forget about the surgery I needed to get done, so once again I am having problems with the doctor's here at CTF concerning my elbow and the constant pain I'm in and they keep giving me the run around and having me see different doctor's whom another is Dr. S. Seyal who told me that whatever the specialist prescribed and recommended then that's what I would get but the (sic) are continuing to keep me on physiciatric (sic) medication saying that it helps nerve damage which I do not have, my bone is breaking apart in my elbow and causing extreme pain and they continue to do nothing.

Dkt. No. 1 at 8.

15

need.  The Court GRANTS summary judgment in favor of Dr. Seyal.

**5.     Dr. Palomero**

Plaintiff alleges that Dr. Palomero violated the Eighth Amendment when Dr. Palomero (1) denied Plaintiff elbow surgery in September 2012 and (2) at some unspecified date after both elbow surgeries, cancelled Plaintiff's morphine prescription and placed him on psychiatric medication to manage his pain.  Dkt. No. 1 at 3, 7–8.

Defendants describe Dr. Palomero's treatment of Plaintiff as follows.  Dr. Palomero examined Plaintiff for the first time on May 14, 2013, ten months after Plaintiff was transferred to CTF, to follow up on a May 3, 2013 complaint of pain in the left foot.  Palomero Decl. ¶ 18. There is no indication that Dr. Palomero discussed Plaintiff's right elbow or elbow surgery at this appointment.  Dr. Palomero next saw Plaintiff a month later, on June 25, 2013.  In response to Plaintiff's complaint that he had been suffering right elbow pain for sixteen months, Dr. Palomero requested a referral for an orthopedic evaluation.  Palomero Decl. ¶ 20.  At the August 15, 2013, orthopedic evaluation, arthroscopic debridement (surgery) was suggested, and Dr. Palomero accordingly put in a request for arthroscopic debridement.  Palomero Decl. ¶ 22.  The following month, on September 10, 2013, Dr. Palomero renewed Plaintiff's morphine prescription. Palomero Decl. ¶ 23.  On January 15, 2014, Dr. Palomero submitted another request for arthroscopic debridement pursuant to a December 2013 recommendation by a different specialist. Palomero Decl. ¶¶ 26, 27.   The following month, on February 28, 2014, Dr. Masem performed the requested arthroscopic debridement.  Palomero Decl. ¶ 28.  Between March 5, 2014 and June 11, 2014, Dr. Palomero saw Plaintiff four times for follow-up on the elbow surgery.  During this time, Dr. Palomero continued Plaintiff's pain medications and referred him to physical therapy. Palomero Decl. ¶¶ 29–33.  Dr. Palomero did not see Plaintiff again for a year and a half.[4]  Dr. Palomero examined Plaintiff on November 3, 2015, and November 19, 2015, to address Plaintiff's seizure disorder and chronic right elbow pain.  Palomero Decl. ¶¶ 47, 48.  At the November 3,

---

[4] During most of the time period between June 11, 2014 and November 3, 2015, Plaintiff was not housed at CTF.  From August 13, 2014 to May 20, 2015, Plaintiff was on parole, and from May 20, 2015 to October 28, 2015, Plaintiff was housed at SQSP.  Palomero Decl. ¶¶ 36, 37 46.

16

2015 appointment, Dr. Palomero submitted a request for a follow-up ortho consultation and noted that Plaintiff's pain had not been well-controlled after he ceased using morphine. Palomero Decl. ¶ 47. At the November 19, 2015 appointment, Plaintiff reported that his elbow pain and range of movement remain unchanged and that he was still waiting for an orthopedic follow-up. Palomero Decl. ¶ 48. Between December 24, 2015 and April 15, 2016, Dr. Palomero saw Plaintiff four times in response to Plaintiff's complaints of chronic right elbow pain. Plaintiff requested morphine, stating that his current pain regime was ineffective. Dr. Palomero refused the request for morphine, stating that Plaintiff was not a good candidate for long-term opiate therapy for chronic pain given his history of substance abuse. Dr. Palomero offered physical therapy, but Plaintiff declined. During that same time period, Plaintiff was observed independently carrying out activities of daily living by using his right arm; going to the food and pill lines without difficulty; and walking regularly for exercise. Palomero Decl. ¶¶ 50–53.

There is nothing in the record from which it can be reasonably inferred that Dr. Palomero denied Plaintiff elbow surgery. First, the record is silent as to whether, at the May 2013 initial examination to address Plaintiff's foot pain, Dr. Palomero discussed elbow surgery or other treatment for Plaintiff's right elbow at his initial examination of Plaintiff. Second, the record indicates that Dr. Palomero took reasonable steps to address Plaintiff's elbow pain. He referred Plaintiff for an orthopedic evaluation; renewed Plaintiff's morphine prescription; followed up on the specialists' recommendations by submitting requests for the recommended surgeries; and examined him in response to reports of pain. To the extent that Plaintiff is arguing that Dr. Palomero violated the Eighth Amendment when, in June 2013, Dr. Palomero requested a referral for an orthopedic evaluation instead of ensuring immediate surgery, disagreement between an inmate and medical personnel as to the appropriate medical treatment, without more, does not rise to the level of a constitutional violation. *Franklin*, 662 F.2d at 1344. Nor is a constitutional violation established simply because Dr. Palomero pursued a different treatment plan (orthopedic evaluation) than what other prison doctors had previously authorized (elbow surgery). *Sanchez*, 891 F.2d at 242. As discussed *supra*, in cases involving choices between alternative courses of treatment, an inmate must show that the course of treatment made available to him was medically

unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to his health. *See Toguchi,* 391 F.3d 1051, 1058 (9th Cir. 2004). Plaintiff has not shown that there is a material dispute as to whether the treatment provided him by Dr. Palomero was medically unacceptable and done with conscious disregard of an excessive risk to his health. Plaintiff's conclusory allegations in his complaint are insufficient to establish a triable issue of fact as to whether the failure to immediately proceed with elbow surgery violated the Eighth Amendment. *Franklin*, 745 F.2d at 1235.

Similarly, there is nothing in the record from which it may be reasonably inferred that Dr. Palomero's refusal to prescribe morphine was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health. Other prison health professionals — the physical therapist, Dr. Seyal, and Dr. Javate — also expressed concern about Plaintiff's reliance on morphine for pain management. Palomero Decl. ¶ 43. Plaintiff was also observed to be functioning well without the morphine. Palomero Decl. ¶¶ 50–53. Dr. Palomero's refusal to prescribe morphine despite the recommendations of UCSF doctors did not constitute deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. A difference of medical opinion as to the appropriate course of treatment does not amount to an Eighth Amendment violation. *Sanchez*, 891 F.2d at 242.

Viewing the record in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Dr. Palomero was deliberately indifferent to Plaintiff's serious medical need. The Court GRANTS summary judgment in favor of Dr. Palomero.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment. The Clerk shall enter judgment in favor of Defendants and close this case.

This order terminates Docket No. 26.

**IT IS SO ORDERED.**

Dated: 9/4/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

18